UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


JACKLIN BOCCIO,

        Plaintiff,

vs.                                  Case No. 8:09–cv–00475–T–24–EAJ

UNITED STATES OF AMERICA,

        Defendant.

_____/

**FINDINGS OF FACT**
**&**
**CONCLUSIONS OF LAW**

        The Court presided over a two-day bench trial in this case on June 1 and 2, 2010 to consider the negligence claim filed by the Plaintiff, Jacklin Boccio, against the Defendant, the United States of America. After considering all of the evidence, including the testimony of the witnesses, the relevant exhibits, and the pleadings of the parties, the Court finds that the Plaintiff failed to meet her burden to prove by a preponderance of evidence that the United States is liable to her for damages. Specifically, Boccio did not prove by a preponderance of evidence that a U.S. postal carrier, acting in the scope of her employment, negligently struck her with a car, injuring her on January 19, 2007.

        As required by Rule 52(a)(1) of the Federal Rules of Civil Procedure,[1] the Court makes the following findings of fact and conclusions of law:

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

## I. FINDINGS OF FACT

### A. Claims & Defenses

Plaintiff Jacklin Boccio brought a Complaint against the United States of America alleging negligence under Florida law through the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, *et. seq.*.[2] In the Complaint, Boccio alleged that a carrier for the U.S. Postal Service struck her with her car while delivering the mail on January 19, 2007, injuring Boccio and exacerbating a pre-existing degenerative neck, back, and spine condition. As a result, Boccio alleged she had to undergo increased medical treatment and spinal fusion surgery. Boccio sought approximately $99,000 in reimbursement for medical bills, $194,000 to satisfy a lien on other medical bills, and unspecified non-economic damages.[3]

The United States denied that Sullivan's car struck Boccio, and contested causation and damages.

### B. Boccio's Pre-Existing Condition

Before the incident on January 19, 2007, Boccio had a lengthy history of chronic neck, back, and leg pain. Boccio testified that she first experienced back pain on February 26, 1988, when she accidentally stepped into a pothole. By 2000, Boccio was regularly complaining of, and seeking treatment for, chronic low back pain and radiating leg pain. Between 2000 and 2007, she routinely described her pain as severe and debilitating, according to her medical

---

[2] Joel Boccio also brought a loss of consortium claim against the United States, but the Court dismissed the claim for failure to exhaust administrative remedies within two years of the incident. (Doc. 14.)

[3] Although Boccio listed these damages in her Pretrial Statement, her counsel in closing argument at trial acknowledged that the figures in the Pretrial Statement were inaccurate and changed the total amount of Boccio's damages.

records. Boccio told her doctors that she felt "crippled" because of her severe pain, and had difficulty driving, doing housework, sleeping, walking, and pushing a grocery cart.[4] At one point, she told her doctor that it felt like her hips were being pulled apart.[5] Asked by her doctors at Comprehensive Pain Management ("CPM") to measure her pain on a scale of 1 to 10 with 10 being the most severe pain, Boccio regularly reported pain levels of either 7, 8, or 10 at monthly visits to CPM.[6] However, she also testified that at different times her pain had lessened, or waxed and waned. She testified that, on some visits to CPM, she reported a pain level of only 5 out of 10.

Between 2000 and 2007, doctors regularly prescribed Boccio a variety of narcotic medications for pain including Percocet, Morphine, Vicodin, and Oxycodone, as well as a muscle relaxer.[7] Boccio also underwent injections in her lumbar spine.[8] On three occasions in 2000, she also sought treatment in a hospital emergency room for back and leg pain.[9] Once in 2001 and once in 2006, she went to the emergency room because of back pain.[10]

As early as 2004, Boccio consulted with a neurosurgeon, Dr. George Giannakopoulos, who told Boccio that she would need spinal fusion surgery because Boccio's pain had become unbearable and because she did not respond to injections. However, because Boccio was a long-

---

[4] Exh. 2, BOC 1131-33.

[5] Exh. 2, BOC 1049.

[6] Exh. 2, BOC 1131.

[7] Exh. 20, BOC 2724.

[8] Exh. 2, BOC 1130, 2787, 2789-90.

[9] Exh. 11, BOC 1692-1717.

[10] Exh. 11, BOC 1687-1717; Exh. 2, BOC 1101-11.

term smoker, Dr. Giannakopoulos considered Boccio a poor candidate for fusion surgery.[11] Boccio saw Dr. Giannakopoulos again in 2005. At that visit, he noted that Boccio was in tears because her pain management treatment was failing. Furthermore, Dr. Giannakopoulos recommended that Boccio get evaluated by an academic neurosurgeon at a tertiary care center.[12]

On January 18, 2007, one day before the alleged incident in this case, Boccio saw Dr. David Columbus at CPM. He noted that her condition was chronic intractable low back pain from lumbar degenerative disc disease.[13] He also noted she had an antalgic gait, diffuse tenderness of the lumbar spine, tender paravertebral muscles, and taut hamstrings. Dr. Columbus added Dilaudid for breakthrough pain.[14]

### C. January 19, 2007 Incident

On January 19, 2007, United States Postal Service carrier Jennifer Berman Sullivan was delivering mail on her regular route in Spring Hill, Florida. She drove her personal vehicle, a 1987 Buick Century sedan with an automatic transmission, which she had owned for eight years. She was acting in the scope of her employment. According to Sullivan, the Buick was in good condition, and regular maintenance was performed on her car. As of January 19, 2007, Sullivan's car had no transmission or brake problems. Sullivan was operating her car while sitting in the passenger's seat and reaching across the front seat to steer and operate the accelerator and brake. As in most automobiles, the steering wheel, parking brake, accelerator,

---

[11] Exh. 2, BOC 1116-17.

[12] Exh. 2, BOC 1115.

[13] Exh. 2, BOC 1165.

[14] Id.

4

and instrument panel were located on the driver's side, not the passenger's side, of the car. Sullivan's car had not been modified to operate like a government-owned postal carrier vehicle, which is driven from the passenger's side. However, according to Sullivan, USPS regulations permit rural carriers to drive from the passenger seat while delivering mail.

At approximately 12:43 p.m., Sullivan arrived outside of the home of Jacklin and Joel Boccio at 2094 Finland Drive. It was a clear, sunny day. Sullivan parked on the opposite side of the street from the Boccio's home, next to the Boccio's mailbox, where there is a slight incline. She put the mail in the mailbox. She then pulled past Boccio's mailbox, put the car in park, activated the emergency brake, and turned off the engine. In compliance with USPS regulations, Sullivan beeped the horn to notify the Boccios that Sullivan had packages to deliver.[15]

Boccio had come outside and was standing next to the driver's window. Sullivan handed her a small package through the window. Sullivan then stepped out of her car, walked around to the back door, took out a bigger package, scanned it and handed it to Boccio. (Boccio claims that there were two packages, not one; and that Sullivan put them on the trunk rather than handing them to her.) Sullivan got back in her car and started to go when she heard Boccio say something and saw a package sitting on her trunk. Sullivan put her foot on the brake, Boccio retrieved her package, and Sullivan started to go again. It was at this point that Boccio claims Sullivan's car somehow rolled back into her, striking her left hip. Sullivan claims she did not hit Boccio. Both Sullivan and Boccio agree that Boccio walked back up to her house and Sullivan drove away and continued delivering mail.

---

[15] The Postal Service instructs carriers delivering packages to beep their horn upon arriving at a residence to make the customer aware of their presence and for safety reasons. The purpose of sounding the horn is not to summon the customer out to the carrier's car.

Boccio's husband Joel was inside the house at the time of the alleged incident, and he did not see what had happened. He testified that he walked outside while his wife was returning to their house, and saw that she was in pain. However, Boccio does not remember that, and Sullivan never saw him. Once inside, Boccio called the post office and claimed that Sullivan had backed into her with her car. After Boccio made the phone call to the USPS, she then called 911 at approximately 1:16 p.m., about 30 minutes after Sullivan had scanned the package.[16]

About one hour after Sullivan delivered Boccio's packages, Sullivan's supervisor, Judie Mueller, drove up to Sullivan, who was still delivering mail, and told her that a customer claimed that Sullivan had hit her. Sullivan, along with Mueller, returned to 2094 Finland Drive. When they arrived, law enforcement officers were there. Jacklin Boccio had already been taken away in an ambulance. Her husband Joel remained at the home.

Boccio was transported to Oak Hill Hospital, complaining of pain on her left side and pain in her back. Upon her arrival at the emergency room, Boccio complained of low back pain, right hip pain, left flank pain, and bilateral thigh pain, according to medical records. Boccio reported that her medical history included chronic back pain, bulging discs, and degenerative joint disease. X-rays and MRI's of her back, hips and upper legs were negative. ER nurses specifically noted in the results of their examination that Boccio's skin was within defined parameters, a finding that meant there was no bruising or wounds. ER personnel also noted that Boccio had no soft tissue swelling. She was given intravenous Dilaudid for pain. She was diagnosed with low back strain and contusions and prescribed Hydromorphone. She was released that same day.

---

[16] Exh. 36, BOC 0006.

## D. Post-Incident Treatment

Four days after the incident on January 23, 2007, Boccio visited Dr. Columbus of CPM. Boccio told him that she had contusions, but Dr. Columbus noted after examining Boccio that no bruises were visible. Boccio continued to treat with CPM, as she had before January 19, 2007.

In February, April and May 2007, Comprehensive Pain Management reported that Boccio suffered from the same degenerative conditions that she had suffered for years before January 19, 2007. Boccio remained on the same regimen of painkillers that she was on before January 19, 2007.

For a period of time after January 19, 2007, Boccio testified that her use of painkillers lessened. In May 2007, four months after the incident, Boccio increased her physical activity, including swimming and exercising. She lost some weight.[17] She was stable on her medication and had no new pain complaints. Her diagnosis remained the same as it had been before the incident: degenerative conditions including lumbar degenerative disc disease and lumbar facet arthropathy.

On August 28, 2007, Boccio met with neurosurgeon Anthony P. Moreno for a surgery consultation. Based on Dr. Moreno's examination of Boccio and Boccio's self-reported history, Dr. Moreno noted his impressions as "Lumbar DDD" and "Lumbar Stenosis."[18] On September 28, 2007, Boccio underwent lumbar laminectomy and spinal fusion surgery.[19] Dr. Moreno testified that the surgery was not successful.

---

[17] Exh. 2, BOC 1166.

[18] Exh. 10, BOC 1396-98.

[19] Exh. 10, BOC 1372, 1389.

Boccio then filed a timely administrative claim with the U.S. Postal Service seeking $100,000 for injuries as a result of the January 19, 2007 incident.[20] On March 16, 2009, Boccio filed this lawsuit contending that Sullivan acted negligently and injured her by exacerbating her pre-existing back condition.[21]

## II. CONCLUSIONS OF LAW

### A. Jurisdiction & Applicable Law

This Court has jurisdiction pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671, *et. seq.*.

The substantive law of Florida determines the United States' liability under the Federal Tort Claims Act because the January 19, 2007 incident occurred in Hernando County, Florida. McCorkle v. United States, 737 F.2d 957, 959 (11th Cir. 1984). Florida law requires a negligence plaintiff to prove "three elements: (1) a duty recognized by law requiring defendant to conform to a certain standard of conduct for the protection of others, including plaintiff; (2) defendant's failure to perform that duty; and (3) an injury or damage to plaintiff that was proximately caused by such failure." Worthington v. United States, 807 F. Supp. 1545, 1565 (S.D. Ga. 1992) (applying Florida law), rev'd on other grounds, 21 F.3d 399 (11th Cir. 1994).

A plaintiff must show by a preponderance of the evidence that a negligent act was a legal cause of damage. Abrisch v. United States, 359 F. Supp. 2d 1214, 1229-30 (M.D. Fla. 2004).[22]

---

[20] Doc. 9-1.

[21] Doc. 1.

[22] "Negligence is a legal cause of damage if it directly and in natural and continuous sequence produces, or contributes substantially to producing such damage, so it can reasonably be said that, except for the negligence, the loss, injury or damage would not have occurred. Negligence may be a legal cause of damage even though it operates in combination with the act of another, some natural cause, or some other cause if such other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing such damage." Id. (internal

8

When a negligence claim is premised on aggravation of a pre-existing medical condition, damages are to be assessed against the negligent party for only that portion of the injury resulting from the aggravation of the pre-existing condition. Thomason v. Gordon, 782 So. 2d 896, 899 (Fla. 5th DCA 2001).

### B. Breach of Duty of Care

After reviewing and considering the evidence, the Court finds that Boccio, who has the burden of proof, has failed to prove by a preponderance of the evidence that Sullivan's car rolled or backed into her, or made any contact with her on January 19, 2007. Therefore, the Court finds that Sullivan did not breach a duty of care that she owed Boccio. However, even if the Court were to find that Sullivan's car rolled into Boccio, Boccio has failed to prove damages that were proximately caused by the negligent act.

Because only Sullivan and Boccio witnessed the incident, the Court, in making its findings of fact, made credibility judgments about their testimony. The Court also considered whether any corroborating evidence supported their accounts. This evidence included medical records and the testimony of Joel Boccio, Boccio's husband; Dr. Moreno, who was Boccio's treating physician; and the Government's two expert witnesses, Dr. Michael Foley and Dr. Daniel Lahr.

Much of Boccio's testimony simply was not credible. First, her account of the incident itself was not believable. For instance, the Court did not find it credible that Sullivan's car could have lurched backwards as Sullivan drove forward. Sullivan drove a car with an automatic transmission, which was in good repair. Photographs of the street at 2094 Finland Drive show

---

citations omitted).

that any incline was so slight as to be hardly perceptible, making it unlikely that a car would roll back as Sullivan shifted into drive.[23] In addition, the Court questions Boccio's account that she was struck with enough force to force her up on the truck of Sullivan's vehicle, yet she walked back into her residence. The Court also did not find it credible that Boccio could have been hit by a car as she described it, yet the medical records from the emergency room showed no bruising on the day of the incident and medical records reflected no bruising four days later.

In addition, Boccio's responses to numerous questions on cross examination were evasive, combative, and raised serious doubts about her truthfulness. For example, the Government asked Boccio why she reported in her answers to interrogatories that she had not suffered any accident related to trauma since 1997 when, in fact, she had been at least twice to the emergency room for back injuries since 1997. Boccio's response—that she did not remember these emergency room visits, or that they were not her but someone using her name and personal identification—was not credible. On direct examination, Boccio also characterized her pain before the January 19, 2007 incident as manageable. On cross examination, the Government pointed out that she had been regularly taking powerful narcotics—prescribed only to treat severe pain—and had repeatedly, over many years, described her pain to doctors as crippling and debilitating, reaching a pain level of 8 out of 10, or 10 out of 10. Boccio's responded that the "girls" at Comprehensive Pain Management and other medical offices had inaccurately reported her level of pain and would write down anything on medical charts.

### C. Causation

Even if the Court had found that Sullivan breached her duty of care to Boccio, the Court

---

[23] Exh. 1, BOC 0417.

still would have concluded that Boccio did not prove by a preponderance of evidence that Sullivan's actions proximately caused Boccio's injuries or damages. The preponderance of evidence showed that Boccio's injuries were pre-existing, and that the events of January 19, 2007 did not exacerbate her injuries or accelerate the need for treatment.

The Court found the testimony of the Government's expert, Dr. Michael Foley, a radiologist and former clinical professor at the University of South Florida School of Medicine, credible and convincing. Dr. Foley analyzed Boccio's medical records, MRI films and reports of her lumbar and cervical spine taken both before and after the January 19, 2007 incident. He testified that the records and films showed that Boccio suffered from a degenerative process only; that there was no evidence of acute injury or trauma on or after January 19, 2007; and that Boccio underwent spinal fusion surgery in September 2007 to remedy Boccio's longstanding intractable back pain caused by degenerative disease.

The Court also found the expert testimony of Dr. David Lahr, an orthopaedic surgeon, who also reviewed Boccio's medical records since 2001, persuasive. Dr. Lahr testified that the records show no evidence of an acute injury on or around January 19, 2007; that Boccio suffered severe and incapacitating pain and was taking large amounts of pain medication prior to the incident; and that the diagnoses for which Boccio underwent surgery were a natural evolution of her pre-existing lumbar spine pathology. Dr. Lahr also testified that in his expert opinion the January 19, 2007 incident did not cause or accelerate Boccio's significant lumbar problems.

In her case in chief, Boccio presented little evidence to support her allegation that the January 19, 2007 incident proximately caused her injuries. The only medical evidence she presented were doctor's statements based on her self-reported history of pain. Because these

11

doctor's statements relied primarily on Boccio's self-reported increase in pain, the Court does not find this evidence persuasive. For instance, Boccio relied upon the testimony of Dr. Moreno, who performed the unsuccessful fusion surgery on her eight months after the incident. On direct examination, Boccio's counsel asked Dr. Moreno, who had no personal recollection of Boccio, whether trauma exacerbated Boccio's degenerative condition. He replied: "I think that would be based on the patient's history. And if the patient gave a history that she had been doing better and then had the accident and the pain was exacerbated, the answer is yes." However, he admitted that his opinion was based entirely on Boccio's self-reported account of her increased pain. Boccio also introduced as evidence an August 8, 2007 note from Dr. Moreno that said Boccio's condition "has been severely exacerbated by the recent accident."[24] But, based on his testimony, Dr. Moreno's statement in the note was based exclusively on what Boccio told him. Boccio's self-reported history that her condition *worsened* after the incident conflicts with medical records that show that Boccio's condition *improved*, at least temporarily, after January 19, 2007.

Boccio also introduced a July 9, 2007 letter written by Dr. Robert Nucci, one of her treating physicians, that said, "Unfortunately, since the accident of 01/19/07, the back pain is much more severe now with radiating leg pain, which is a new finding."[25] Although Boccio originally listed Dr. Nucci as a witness, she did not call Dr. Nucci to testify. Therefore, the Court could not ask Dr. Nucci about the basis for his statement, but assumes that it also was based on the patient's self-reported history. Based on the text of the letter, Dr. Nucci appears to

---

[24] Exh. 10, BOC 1396-98.

[25] Exh. 12, BOC 1852.

be repeating Boccio's own description of an increase in pain. Therefore, while the Court places some weight on this evidence, without hearing the testimony of Dr. Nucci, the Court cannot place significant weight on Dr. Nucci's letter.

Therefore, the Court concludes that Boccio failed to establish by a preponderance of evidence that on January 19, 2007 Sullivan breached her duty of care by striking Boccio as Boccio alleges. The Court also finds that Boccio did not prove by a preponderance of evidence that Sullivan proximately caused any of Boccio's damages.[26]

## CONCLUSION

Therefore, the Court finds for the United States in this case and directs the Clerk to enter a judgment in this case in favor of the Defendant, the United States of America, and against the Plaintiff, Jacklin Boccio. The Clerk should then close the case.

**IT IS SO ORDERED.**

*Done on July 8, 2010.*

SUSAN C. BUCKLEW
United States District Judge

---

[26] In addition to seeking economic damages, Boccio sought non-economic damages, including past pain and suffering, past loss of capacity to enjoy life, future pain and suffering, and future loss of capacity to enjoy life. In order to obtain these damages, Florida Statute §627.737(2)(b) requires Boccio to prove within a reasonable degree of medical probability that she suffered a permanent injury. See Eley v. Moris, 478 So. 2d 1100, 1103 (Fla. 3d DCA 1985). Since Boccio did not prove by a preponderance of evidence that she suffered any injury as a result of the January 19, 2007 incident, for the same reasons she also did not prove within a reasonable degree of medical probability that she suffered a permanent injury.